at all. Oral argument not to exceed 15 minutes per side. Mr. Bayless II for the defendant's comments. Good morning. I'd like to reserve three minutes for rebuttal. I represent the appellants here before the court. They are employees of the Kentucky Department of Corrections and have been sued in their individual capacities. First, we do not believe that any action they took violated the constitutional rights of Mr. Jones. And we also take issue with the idea that there is any established law that would have placed them on notice that what they had done would have violated Mr. Jones' constitutional rights. Assuming Mr. Jones is in prison longer than he was legally ordered to be in prison, would you concede that that allegation is a violation of the Constitution? That allegation is a violation of the Constitution. Also it's clearly established that to imprison someone longer than their term, it's clearly established that that's a constitutional violation. So are you just arguing facts that there's no factual connection between your defendant's actions and the unlawful imprisonment? Is that your position? Yes, because of the positions that they took and the role that they had. But if it's factual based, we don't have jurisdiction over it, do we? Because this is an interlocutory appeal. We can't get into the facts. All we can do in an interlocutory appeal is to decide issues of law. And how is that an issue of law then? Put that differently. Can't we just assume the facts are as the other side asserts them to be? We have to. Otherwise we don't have jurisdiction. I think we have at this point completed discovery and I think there are some... For today's purposes, can't we just assume that the facts are as your friend on the other side asserts them to be? And assuming those are the facts, are there some legal arguments you think we should consider as to why you win? Well, yes. The legal reason is I think a misinterpretation of how KRS 532.120 is interpreted. And the argument there, and it's a purely legal argument, is that the Department of Corrections is allowed to give credit to Mr. Jones based on the allegations contained in his complaint. The Department of Corrections is authorized by statute to give credit for custody prior to the commencement of a sentence as a result of the charge that culminated in the sentence. That's the only limited power the Kentucky Department of Corrections has. Regarding the interpretation of it, hasn't the judge below rejected that by ordering his release? Your argument as to how the Kentucky statute is interpreted, that's been rejected, right? No. No? No. I thought the judge actually had ordered that the petitioner is hereby ordered to be released. And to do so, he implicitly rejected your interpretation of the judgment of the sentence, I think. No, I don't believe that that's correct. Because what had happened here below was, and I don't believe this is disputed, is there was a plea agreement between the defense and the prosecution that said Mr. Jones will get credit against his sentence back to the time that he was indicted. Was that a plea agreement accepted by the court? And that was a plea agreement accepted by the court. Are you sure? The court doesn't really quite say that. And that's the issue, is that there is nothing in that order that was issued that said we're going to give him credit according to this But it doesn't really track the plea agreement. And that was the problem. Assuming that's the case, doesn't the defendant have the right to appeal that decision to the court of appeals? Well, that's part of our argument, is that the correction of that was something that had to be taken care of by a court. The answer is yes. The other side could have appealed to the court of appeals, but didn't appeal. That's correct. So it decides to litigate this through the administrative channel. It goes to Foster. Foster's not sued in this case, right? No. Do you know why? I have no idea. Does Foster have immunity? Well, I think all of them have immunity. Does Foster have the best case for immunity because she's effectively doing a judicial function that she's calculating the sentence? Well, I don't think she was ever a party to the case. I know she wasn't a party. I was just wondering if you might argue that it's funny to me that you couldn't sue the judge, but the judge screwed this up twice. He went to the judge once, he didn't follow the plea agreement, he went back to him, and he again just kicked it back to the prison people. So twice the judge could have corrected this and didn't. Judge Griffin is right that the third time the judge apparently recognized his error and corrected it. And the person it goes to is Foster. Foster gets it wrong, but Foster's not sued in this case. The people who are sued are the three people who are sued are the least culpable people of the five involved. Well, I don't concede that Foster was wrong because Foster was looking to see was there any time that Mr. Jones spent in custody due to the fact that he had been indicted on the robbery charge. And there was no time. He was in the custody of the Indiana Department of Corrections for a crime that he had committed there. Subsequently, he was in custody of the Bureau of Prisons because of crimes he had committed in Indiana or in Illinois and only came to Kentucky on a detainer. So it's confusing. Foster rules and it goes up to Belin and Bentley, I don't remember the exact order, and they kick it back to the judge, right? Don't they send it back to the judge? And the court just signs the thing that they sent to them, which to me sounds like an affirmance. I mean, if you disagreed with it, you would note that, but the judge just signs the thing that they sent. And the record below is not particularly good. So they are basically following the court order. Right. They are reading the court order, which deferred the calculation to parole and probation. Parole and probation because Mr. Jones had spent no time incarcerated prior to being sentenced in Kentucky. Solely because he was charged, well actually because he was charged in Kentucky at all. He was serving time. You sound like all factual matters that we have no jurisdiction under for appeal, interlocutory appeals. And tell me why we have jurisdiction to figure out all these facts, because I don't think we do. Because I think they are uncontested in the record. Okay. Don't we accept their allegations and their complaint that your clients were responsible for the incarceration? We don't accept that? No, I don't believe when discovery has been completed that that's required. The record is fully developed. Let's assume Foster got it wrong. You're saying Foster got it right. I'm saying it's difficult. Let's just assume Foster got it wrong. The defendant appeals, goes to the administrative channel, and those are the people who are sued. I mean, part of this case I cannot understand, and your friend on their side will tell us why, is why they didn't sue Foster. The original sentence is either the judge or Foster. It's not these people. And they send it back to the judge, and the judge basically affirms and sends it back to them. So their options were to disobey a court order, which seems like a pretty high risk thing to do, or keep the defendant in prison. Right. And I think they are reasonable in relying on Foster's calculation. What about the judge's order? The two orders from the judge, what about relying on those? Well, I don't know that they relied on the initial sentencing order, because they said you need to look to parole and probation for this calculation of pre-sentence credit, which they do. They go to get the pre-sentence investigation, which contains that information. I think the contention that the plaintiff has been making is that somehow they have to do something more than their job. They have to then become detectives to figure out how the judge made a mistake, and how the defense attorneys may have made a mistake in entering into this deal where there was no authority at all to give credit in the manner credit was given. I think they were presented with this information, and they made the decisions based on the data that it's their job to look at. So the warden is also a defendant. The warden isn't really involved directly in this calculation process, right? He has nothing to do with it. When the warden gets asked about this, he says to the defendant, here's the administrative channel to pursue. Right. And he has no authority to release somebody, because Beelin and Bentley are in the central records office at the Department of Corrections. They're the ones that are ultimately responsible for saying, yes, this person has served out his sentence, and then the warden just carries out a ministerial function of signing the proper paperwork in order to get him out the gate. He had no involvement at all in the calculation of the sentence. I think I'm just about out of time, unless there are other questions. No. Thank you. You'll have your rebuttal. Good morning. Good morning. May it please the court. My name is Aaron Bentley. I'm here representing the plaintiff, Albert Jones. Frankly, what the defendant's argument just highlighted was that all their arguments are factual. Judge Griffin twice asked Mr. Bayless about why this court had jurisdiction, what the legal arguments were, and Mr. Bayless didn't provide a response either time. There are only factual arguments that are being presented to the court. What if we assume that Foster got this wrong? It's very complicated. I don't know. But let's assume Foster got it wrong. We'll give you those facts. What are the other facts that are in contention? We assume, then, that she got it wrong, because of the administrators. They send it to the court. They get it back. Foster does it wrong again, and eventually the court gets it right. Are there any facts that are – I mean, that's a pretty favorable telling of your version, right? Yes, but that doesn't have anything to do with the legal arguments. We're here on qualified immunity. I agree with you. So what are the legal arguments? You kind of heard who I saw the case. The judge enters initial order, arguably doesn't comply with the plea agreement. Your client can appeal that – your client has the right to appeal a decision that doesn't follow the plea agreement. Correct? I'm not a criminal lawyer, Your Honor. Okay. So I think they do. I think the statute says that. But the client doesn't do that, doesn't appeal. It just rests with the district court decision, which it doesn't think follows the plea agreement, or the trial judge. It goes to Foster, and Foster – we'll assume Mets screws this up. I mean, district judge doesn't get a lot of direction. Why didn't you sue Foster? Well, first, I don't think it matters. But second – Okay, I think Foster is the most culpable – arguably the most culpable person. We didn't sue Foster because she wasn't in the documents that I received before the statute passed. She could have – That's it. That's the answer. But Foster was – isn't Foster the most important person in this whole process? She's like – or the – she's the – all those things funneled through her, and she gets it wrong. She's important, and she got it wrong. But that doesn't eliminate the fact that Bielan and Bentley had the responsibility and the authority to get it right. Well, so the judge gets it wrong. Foster gets it wrong. It's all up to Bentley and Bielan to solve the problem. I don't know if I want to call it a disagreement, but where we're not on the same page here, Judge Riedler, is that the judge's orders don't matter. The statute says the Department of Corrections has to credit against the Senate. The trial court doesn't have the authority to do it. That's what the statute says. Okay, and then Bentley and Bielan recognize some tension, and so they send it back to the judge. And what does the judge do? I believe Foster sent it back to the judge. Okay, Foster, someone sent it back to the judge. What does the judge do? That's not in the record. The defendants have argued that the judge signed it. Yeah, is it in order? I mean, couldn't we take notice of that? No, I don't believe that is in order. There's no testimony that that is even signed by the judge. Okay, so the judge sends it back. Can we agree on that? I don't think that's in the record. Okay, well, it's in the record that it goes to the judge, but it's not a record that it comes back. There's nothing in the record. Well, it goes back to the judge a third time, right, because the judge eventually lets him out of prison. The judge orders that he be granted the credit that he was entitled to. Yeah, but in the in-between time, didn't it go to the judge and then Foster and Belin and Bentley get involved again? There's no evidence. Why did it have to go to the judge a third time? Because nothing had happened. Mr. Jones hadn't heard anything back. He filed a new motion with the judge to say, hey, they're still not helping. Okay, so it sounds like it went to the judge, and the judge either rubber-stamped what they'd done or didn't do anything. Either way, it's in the judge's hands at that point. I disagree, Your Honor. The judge told them to calculate according to this statute, and the statute clearly says they have to fix the problem. That's what the judge told them. Well, the judge shouldn't be creating problems in the first instance, but the judge says it's a Foster. I disagree that the judge created a problem, Your Honor. Okay, so the judge does his job, sends it to Foster. Foster doesn't do her job, and it goes back to the judge. And the judge doesn't, before the defendant is out of prison, the judge does not correct anything. That's correct. And you're saying that Foster's, the people who are in the administrative appeal chain, it's their fault. Yes. Because Foster got it wrong, and the judge never said it was wrong, and it's complicated, and they're supposed to say, you're right, Foster and judge, we know, here's how it is. Yes, they have not just the authority, the responsibility under the statute to make sure that Mr. Jones gets all the credit he's entitled to. That's their responsibility. And the Supreme Court, the Kentucky Supreme Court made that very clear in Bolling v. White. You know, in Bolling, we had a situation where the sentencing court explicitly gave Bolling zero days of jail time credit. And the KDOC officials, including Defendant Beelin, granted him credit, 1,370 days, that the sentencing court said he wasn't entitled to. And when they did that, it explicitly violated the statute. But by the time it got to the Kentucky Supreme Court, the statute had been amended, and the Supreme Court says, fine, under the amended language, you can do that. In fact, you have to do that. So that's a state law decision. It is. You're clearly established federal law. There's a case that says that if the administrative officers in an appeal process for sentences don't correct an error arguably made by the person who's primarily supposed to calculate it and or the judge, that that violates the Constitution. And that's essentially what Shorts v. Bartholomew says. No, it just says you can't serve too long a sentence, doesn't it? Shorts talks about three separate cases, each of which involve administrative people within those facilities doing or not doing some task. And that's what the Shorts decision is based upon. That's exactly what happened here. And I've outlined how this case relates to those cases in the brief. I'm not going to repeat all of that. But there's administrative people within the chain who get it wrong or who don't investigate even. And the Sixth Circuit said based on those cases, that's where this right comes from in Shorts. So absolutely, Shorts stands for that. But this court already decided that there is clearly established law that was violated the first time this case was in front of this court. So the law of the case already establishes that we've cleared the clearly established law hurdle. That's not a problem. The question is, is there some sort of purely legal question that the lower court got wrong? So the only question is about this statute. So what the defendants are asking the court to do is to interpret a Kentucky statute against its plain language, to add prohibitions that it doesn't include, and all at the same time, not providing a single case that supports their interpretation. It's been 12 years since this statute was amended. And there's not one case that the defendants have cited that support their interpretation of this statute. Not one. It's very confusing. You might be right. Well, I'll concede that you're right about the calculation. But the most culpable person is Foster, hands down. Who does Foster answer to? Foster works at the prison, right? He works with the Department of Corrections. Is the warden ultimately responsible for decisions made in that warden's prison? The warden is certainly ultimately responsible for who can get released. Sure. No doubt about that. The buck stops with the warden, right? Yes, Your Honor. And to point the finger at a subordinate doesn't get the warden off the hook, I assume. I don't think any of them. Well, anyway, it might be a factual issue as well. But normally by saying, my employee screwed up, doesn't really get the supervisor off when there's a chain of command. Right, Your Honor. I mean, in these cases, we always sue the warden because the warden is ultimately responsible for decisions in the prison. I agree with that, Your Honor. I think that's black letter law. Is the warden in the chain of review for the sentence calculation process? No, Your Honor. He's not. But he makes the ultimate decision, right? He does. He says here he rubber stamps what his subordinates calculate. Well, it's his decision, right? He signed the order releasing Albert Jones from prison. Sure. And he's the one that ultimately determines to keep him in prison. Anyway, I'm not getting into factual disputes here. Unless there's a pure legal question, I take the position we have no jurisdiction over this. This is a denial of qualified immunity, and our review is extremely limited. You haven't filed a motion to dismiss, but I think you probably could have. No, Your Honor, I haven't. I thought it was more appropriate and more efficient to just handle that in the... Sure, because they have not conceded the facts as represented by the plaintiff, as is required for our review. Absolutely. And that's a basic tenet of us reviewing a denial of qualified immunity. It is, Your Honor, and I think that's proven by the fact that we've been talking about facts for most of the argument this morning. Sure, that's all we've been talking about. Well, the role of who the players are is a legal question, right? I mean, who calculates a sentence? What's the legal regime for appeals? That's a legal question. That's a factual question, Your Honor. Sorry? That's a factual question, Your Honor. I disagree. Okay. But the warden has the legal authority to just release someone contrary to a court order and contrary to the calculations by the Department of Corrections. You're saying that in Kentucky, the warden has the power to just simply release someone over a contrary court order and a contrary sentence by the Department of Corrections, who's responsible for calculating that. That's what you're saying. No, Your Honor, I haven't said that. Well, that's well... Your Honor, warden is sued in this case because Mr. Jones explicitly went to him on two separate occasions and said, they're not getting this right. Can you do something? And he didn't do anything. But the warden's not in the direct... He told him what the process... I mean, the process set out by Kentucky law. He said, follow the process set out by Kentucky law, which they did. I'm sorry. Still, we're talking about facts. I don't want to talk about... I'm not talking about facts. I'm talking about Kentucky law. The only Kentucky law that we're concerned with in this case is the statute. And the statute says... Well, you're saying the warden has this authority to just release people. Or somehow the warden's culpable. And I'm really having trouble understanding under Kentucky law why the warden is culpable. The warden is culpable because he didn't do anything. You have to take more than ineffectual action. Well, he told him to go through the review process, which is mandated by Kentucky law. And Mr. Jones told him, I've already done that, and it didn't work. I didn't get anywhere with that. And so then what's the warden supposed to do? Look into it. Do something. Do more than nothing. He has to investigate. That's what Short says. He has to investigate the problem. Even though the warden's not at all in the direct chain of command of any of these people, really. The statute says the Department of Corrections. The warden is certainly part of the Department of Corrections. He has the authority to do something about this. He has the authority to call up these people, find out what's happening. If he had done something, maybe he gets off the hook. But he does nothing. Nothing at all. What would he have done if he had called all of these various defendants and said, look, I don't think the way you're calculating this is either factually or legally appropriate. So recalculate this. And suppose they had recalculated it and come to the conclusion that you would like to have had them come to. Then what would he have been able to do? Well, at that point, they came to the conclusion that I believe is correct. Mr. Jones would have had enough credit to be released from prison. And the warden would have said he has to be released. Yeah. The warden would sign the release just like he did ultimately after Judge Edwards ordered them to. So that would have. Yes. If the court orders you to release someone and you're the warden, I'd recommend following the court order. But the situation you described was there was no court order requiring the warden to release him at that point. Yes, after the court said release him, he did. No court order is required. That's the primary point where we disagree, Your Honor, is this authority falls with the Department of Corrections. Under the pre-amendment statute, it was up to the sentencing court to decide. And in 2011, the Kentucky General Assembly said, we don't want the sentencing courts involved with granting jail time credit anymore. Largely because the district courts lose jurisdiction to amend their judgments after 10 days. So we've got to have someone else who has authority to do this after 10 days. We all agree this got sent back to the court. I agree. But it doesn't matter that it got sent back to the court. Well, you're saying the court couldn't correct the problem? I have no idea if the court did. The court did correct the problem in the end. The reason it got out is because on the third time, the court corrected the problem. It did. That's true. The second time, the court corrected the problem, too, and it didn't. I don't know, but I have, with all due respect, I have no idea what that has to do with the purely legal questions that are before the court. I don't see, I can't sue the judge. I haven't sued the judge. The judge said calculated according to the statute, which is what they were supposed to do. They messed that up. At the expiration of a properly calculated sentence, including properly calculated credit, when that day comes that the time is up, is anything further necessary under Kentucky law from the court in order for the warden to release the prisoner? No, Your Honor. The court doesn't do anything else once that happens. That's all handled by the Department of Corrections. Thank you. I have less than a minute remaining, so I don't want to jump into anything else. I just quickly want to say the KDOC, including Defendant Beiland, have long been unilaterally modifying credit awards. Over the last at least 20 years, they did it in bard, they did it in bowling, and they clearly knew that they could. Heck, they did it sometimes when they couldn't, and they did it anyway. So there's no question they knew that they could, and once the statute was amended, it wasn't just that they could, it was that they had to. So the fact that there have been no legal arguments made to disrupt what the district court did, I would just ask that the court affirm the judgment of the district court and let Albert Jones finally get these claims in front of a jury. Thank you. Very well. Rebuttal? The interpretation of bowling versus white is the central legal issue in this case. And frankly, the interpretation that's being given by the plaintiffs is just not correct. Because the statute, and here's the plain language of the statute, time spent in custody prior to the commencement of a sentence as a result of the charge that culminated in the sentence shall be credited by the Department of Corrections toward service of the maximum term of imprisonment in cases involving a felony sentence and by the sentencing court in all other cases. The holding is, nevertheless, under the new version of KRS 532.120, Corrections has the power, indeed the responsibility, to credit time spent in custody toward an inmate sentence. And that term, time spent in custody, is defined in the statute as time spent in custody in Mr. Jones' case on the robbery charge. At no time prior to him coming into the custody of the Kentucky Department of Corrections was he being held on the robbery charge charged in Kentucky. He was being held, and this is undisputed, by the Indiana Department of Corrections for a criminal conviction in Indiana and for a criminal conviction in federal court in Illinois. This statute does not give them authority to grant credit for any of that time that he is incarcerated in another jurisdiction for a crime committed in that jurisdiction. Their limited power is to correct a situation where it is discovered, for whatever reason, that he has been held on that robbery charge solely prior to his sentence. And there is no time during which that condition was fulfilled. That's why I said that the parole and probation officer who works in a completely different division from the warden, the warden has nothing to do with that. In fact, the warden is not even the supervisor of Dillon or Bentley. They work in the central office in Frankfurt, not at North Point Correctional Complex. All the warden can do is to point to the administrative procedures that are available and for the judge... Who did Bentley and Dillon report to? I don't know specifically. Is there an administrative channel that serves statewide? Yes. So Foster is at the prison? Or Foster is also in Frankfurt? No, Foster is actually in the parole and probation office in Louisville. She is assigned to the... None of these people are in the prison with the ward? None of the people involved in this. State administrative channel. Right. So every prisoner goes through the same process? Yes. There is a central area in the central office of the Department of Corrections that is responsible for calculating and auditing the calculation of sentences. They have the final word. So the warden says there is a state process in Frankfurt and that's what you need to follow. Bentley and Dillon, who do they report to? They report to the director of... Is all of this in the record? I believe that it is, yes. It's all in their deposition testimony where they explain their lines of authority. Who do they report? I'm sorry, can you finish the answer? They report to whoever is the director of the offender records branch and I don't recall... Does this go through a cabinet? Does this go through a cabinet member? Yes, and they ultimately go to a deputy commissioner and the Department of Corrections is part of the Justice and Public Safety Cabinet. So ultimately the cabinet secretary oversees this administrative process and oversees the wardens? Well, actually the cabinet secretary doesn't actually get involved in that. Ultimately it would be the commissioner of the Department of Corrections. Okay, I see you are out of time. Any further questions? No. All right, thank you, counsel. The case will be submitted. Thank you. We'll call the next case.